UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| SANDRA KAYE GOOD, | ) |
| *Plaintiff*, | ) |
| | ) Case No: 2:20-cv-157 |
| v. | ) |
| | ) Judge Christopher H. Steger |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security Administration, | ) |
| | ) |
| *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

Plaintiff Sandra Kaye Good seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from her denial of disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner") under Title II of the Act, 42 U.S.C. §§ 401-34. [*See* Doc. 1]. The parties consented to the entry of final judgment by the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 14].

For the reasons that follow, Plaintiff's Motion for Summary Judgment [Doc. 15] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 17] will be **GRANTED**, and judgment will be entered **AFFIRMING** the Commissioner's decision.

**II.    Procedural History**

In March 2017, Plaintiff applied for disability insurance benefits, alleging disability as of May 9, 2016. (Tr. 10). Plaintiff's claims were denied initially as well as on reconsideration. *Id.* As a result, Plaintiff requested a hearing before an administrative law judge. *Id.*

At a hearing on June 6, 2019, in which Plaintiff was accompanied by his attorney, Administrative Law Judge Charles R. Howard (the "ALJ") heard testimony from Plaintiff and a vocational expert. (Tr. 10, 17). The ALJ then rendered his decision, finding that Plaintiff was not under a "disability" as defined by the Act. (Tr. 16).

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial; but, that request was denied. (Tr. 1). Exhausting her administrative remedies, Plaintiff then filed her Complaint [Doc. 1] in July 2020, seeking judicial review of the Commissioner's final decision under § 405(g). The parties filed competing dispositive motions, and this matter is ripe for adjudication.

### III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. Plaintiff met the insured status requirements of the Act through June 30, 2021.

2. Plaintiff did not engage in substantial gainful activity since May 9, 2016, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

3. Plaintiff had the following severe impairments: degenerative disc disease; Baker's cyst, left knee; and fibromyalgia (20 C.F.R. §§ 404.1520 *et. seq.* and 416.920(c) *et seq.*).

4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) except never climbing ladders, ropes, or scaffolds, occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and avoiding concentrated exposure to unprotected heights and concentrated exposure to hazards.

6. The claimant was capable of performing past relevant work as a housekeeper, waitress, and deli manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

7. Plaintiff was not under a disability, as defined by the Act, from May 9, 2016, through the date of the decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

Tr. at 12-16.

## IV. Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, she is not disabled; (2) if a claimant does not have a severe impairment, she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, she is disabled; (4) if the claimant is capable of returning to work she has done in the past, she is not disabled; (5) if the claimant can do other work that exists

in significant numbers in the regional or the national economy, she is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering her age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider

evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, "issues [that] are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

V.   **Analysis**

Plaintiff contends substantial evidence does not support the ALJ's residual functional capacity ("RFC") determination because the ALJ: (1) failed to properly address and evaluate the weight given to the examining sources; and (2) did not properly consider Plaintiff's allegations. The Court will address these issues in turn.

A.   **Examining Sources**

Plaintiff's argument regarding examining sources boils down to: (1) issues with how the ALJ supported his rationale; and (2) inconsistencies between the RFC and the opinion evidence.

Regarding the ALJ's support for his rationale, Plaintiff alleges a deficiency regarding examining provider Dr. Robert Blaine. Plaintiff claims "the ALJ did not properly address the reason for rejecting Dr. Blaine's standing, walking, and lifting limitations." [Doc. 16 at 10].

An ALJ may rely on opinions from various acceptable medical sources. *See* 20 C.F.R. § 404.1527. However, the ALJ is not required to explain the reasons for rejecting a consulting doctor's opinion in the same manner as an explanation is required for rejecting a treating doctor's opinion. *See* Norris v. Comm'r. of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012) ("[A]n ALJ need only explain its reasons for rejecting a treating source statement because such an opinion

carries 'controlling weight' under the SSA.") (citing Smith v. Comm'r. of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007) ("[T]he SSA requires ALJs to give reasons for only *treating* sources." (italics for emphasis in the original)).

Here, Dr. Blaine is not a treating source. Thus, the ALJ is not required to give good reasons for rejecting Dr. Blaine's standing, walking, and lifting limitations. Plaintiff cites *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) for the proposition that "an ALJ is required to set forth a valid basis for rejecting the opinions of treating, examining, and non-examining sources." [Doc. 16 at 12]. However, *Shelman* states that an ALJ "is required to set forth some basis for rejecting [a treating physician's] opinions." 821 F.2d at 321. *Shelman* does not set forth any such requirement regarding non-treating sources.

Regarding inconsistencies between the determined RFC and the opinion evidence, Plaintiff first alleges that the ALJ's RFC more closely resembles Dr. S. Gupta's opinion than Dr. Blaine's opinion. Plaintiff maintains that this is inconsistent with the ALJ's decision to give "little weight" to Dr. Gupta's opinion and "some weight" to Dr. Blaine's opinion. Plaintiff further claims the alleged inconsistency is counter to the Act because Dr. Gupta is a non-examining source while Dr. Blaine is an examining source. Finally, Plaintiff asserts that the inconsistencies are greatly impactful because "Dr. Blaine's opinion is most consistent with sedentary work as opposed to the light finding of the ALJ," meaning "a finding of disabled would be warranted." [Doc. 16 at 11].

The RFC determination sets out an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 404.1545(a). The ALJ makes an RFC determination "based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt [medical]

opinions verbatim; nor is the ALJ required to adopt the [medical] limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Regarding examining sources versus non-examining sources, the regulations state, "Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." 20 C.F.R. 404.1527(c)(1).

Here, the ALJ made an RFC determination that reflected some influence from both Dr. Gupta and Dr. Blaine. The ALJ was not required to wholly adopt one or the other, nor was he required to make the RFC look more like one opinion or the other. Similarly, the regulations do not require the ALJ to give more weight to an examining source than a non-examining source. They merely illustrate what happens in the usual course. However, the Court agrees with Plaintiff's concern about general inconsistency. If an RFC reflected an opinion given "little weight" more than an opinion given "some weight" it would seem curious and internally inconsistent. Whether or not that happened here, the cause for confusion seems to be the ALJ's sentence regarding Dr. Gupta, which states, "As for the opinion evidence, the undersigned assigned little weight to [Dr. Gupta's opinion] . . . because the opinion was supported by signs and medical findings and is consistent with other medical evidence of record." (Tr. 14). When no other rationale is provided, there is a clear logical discrepancy when "little weight" is assigned to an opinion because it is "supported" and "consistent." This gap in logic constitutes error. The effect of this error is discussed in § V.C. below.

B.  **Improper Consideration of Plaintiff's Allegations**

The ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms [were] inconsistent" with the medical and other evidence. (Tr. 13). Plaintiff claims the ALJ did not properly consider her allegations regarding physical difficulties. She

bases this argument on: (1) the ALJ's inference against Plaintiff regarding her job loss; and (2) the ALJ's inference against Plaintiff regarding her activities of daily living.

The ALJ cited the fact that Plaintiff "stopped working because she lost her job with Fisherman Dock, not because of her impairments," as being one of several reasons he found Plaintiff's claims to be inconsistent with the medical and other evidence. *Id.* Plaintiff claims this inference is improper because "her employer did not give her a reason as to why she lost her job" and because she struggled "performing her job with constant pain reported when working." [Doc. 16 at 14]. The Court agrees with Plaintiff that the ALJ's negative inference is improper. In the absence of a reason for job termination, the only other evidence on the matter showed an "interference with work" and "constant pain when working." (Tr. 294). Therefore, it is not reasonable to hold it against Plaintiff that she did not cease working "because of her impairments." The effect of this error is discussed in § V.C. below.

Regarding Plaintiff's activities of daily living, the ALJ cited the fact that Plaintiff "reported that she could perform housework, shop, exercise, and sleep better with the use of pain medications" as being another reason Plaintiff's claims were inconsistent with the medical and other evidence. (Tr. 14). The ALJ specifically pointed to evidence about Plaintiff's sleeping and walking. *Id.* Plaintiff claims that the ALJ erred by failing "to address Plaintiff's report that such activities take longer than they did before and/or she requires breaks when engaging in the activities (Tr. 198-204, 227-231, 325)." [Doc. 16 at 14].

The ALJ may consider daily activities as one factor in the evaluation of subjective complaints. 20 C.F.R. § 404.1529; SSR 16-3p; *see Temples v. Comm'r Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in

determining whether Temples' testimony was credible."). Further, an ALJ's inference one way or the other is proper if the evidence regarding daily activities is plausibly contradictory. *Amir v. Comm'r of Soc. Sec.*, 705 F. App'x 443, 450 (6th Cir. 2017) ("But as we have previously noted, evidence regarding [plaintiff's] daily activities was plausibly contradictory. The ALJ's adverse inference was therefore justified under prevailing Sixth Circuit law.").

As an initial matter, the regulations clearly communicate to a claimant that an ALJ must *consider* "all of your statements about your symptoms, such as pain, and any description your medical sources or non-medical sources may provide about how the symptoms affect your activities of daily living and your ability to work." 20 C.F.R. 1429(a). But Plaintiff fails to point to any regulation or case supporting the assertion that the ALJ is required to *address* all such statements and descriptions. Nonetheless, an examination of the record regarding Plaintiff's activities of daily living, including the three citations provided by plaintiff, yields the following summary about Plaintiff's activities generally, with special attention given to sleeping and walking:

| Date | Document Type | Sampling of Relevant Information | Cite |
|---|---|---|---|
| 1/27/17 | Medical Visit Self-Assessment by Plaintiff | "Walk 1.5 miles per week, member of gym, just started pool exercise." | (Tr. 322) |
| 1/27/17 | Medical Visit Notes by Doctor | "Able to do activities of daily living slowly. Activities increase pain." "Walks easily, sits easily." "Sleep poor. 4 hours with awakening." | (Tr. 325) |
| 3/19/17 | SSA Function Report by Plaintiff | "I'm lucky to get 2 to 3 hrs of sleep a night. I'm up and down all night with pain." "I can walk around for 30 mins or so then I just need to sit for a min or two." | (Tr. 198, 202) |
| 6/16/17 | Medical Visit Notes by Doctor | "Able to do housework, shop, exercise, and sleep better with use of pain medications." "Patient states that her posture of sleep is fair. The patient averages 4-5 hours of sleep a night. She wakes up 2-3 times during the night due to pain." "Her pain worsening factors include bending, | (Tr. 396, 399) |

| | | lifting, walking, and cleaning house."<br>"The patient reports that her activities have improved after starting medications." | |
|---|---|---|---|
| 7/20/17 | Medical Visit Notes by Doctor | "The patient notes that she is sleeping well and not waking with pain through the night."<br>"The patient states that her ability to perform daily activities has improved on the current treatment plan. She was able to increase her activity level and experienced an increase quality of life." | (Tr. 406) |
| 8/23/17 | SSA Function Report by Plaintiff | "Sleep no more than 2 hrs/night due to pain."<br>"Walking is limited."<br>"Can't walk in parks."<br>"Can walk for 50 yds before needing to rest for 30 minutes." | (Tr. 227, 230-31) |
| 3/8/18 | Medical Visit Notes by Doctor | "She does walking regularly." | (Tr. 1142) |

This evidence could plausibly be interpreted as showing an ebb and flow of symptom improvement and worsening. It is also plausible to see the reports from Plaintiff to the SSA as showing a deterioration of her condition while the reports from her doctors show an improvement during the same time frame. To be sure, this sampling of information is small— there is certainly a great deal more information concerning plaintiff's activities of daily living in the record. However, it illustrates that the ALJ's conclusion was a reasonable interpretation of data that could also reasonably lead to other conclusions. In total, the evidence regarding Plaintiff's claims about her symptoms is plausibly contradicted by other evidence in the record, and the ALJ's negative inference was therefore justified. *Amir*, 705 F. App'x at 450.

C.  **Effect of the ALJ's errors**

It is the ALJ's responsibility to render RFC determinations after reviewing all the relevant evidence. *Rudd v. Comm'r of Soc. Sec.*, No. 12-6136, 2013 WL 4767020, at *8 (6th Cir. Sept. 5, 2013); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009). Though Plaintiff may disagree with the ALJ's RFC finding, the Court must affirm if substantial evidence supports the ALJ's decision. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999)

("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.").

Here, the ALJ's errors were: (1) giving little weight to an opinion because it was supported by and consistent with the evidence of record; and (2) relying on an unreasonable negative inference regarding why Plaintiff stopped working. The question for the Court is whether these errors are harmless. *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, however, we review decisions of administrative agencies for harmless error."). In this context, the question is whether the ALJ's errors leave his RFC determination unsupported by substantial evidence.

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson, 402 U.S. at 401). While substantial evidence is "more than a mere scintilla," "the threshold for evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

As discussed above, the ALJ confusingly professed to assigning little weight to Dr. Gupta's medical opinion. But Plaintiff complains that the ALJ's RFC should look *less* like Dr. Gupta's opinion and more like Dr. Blaine's opinion. There are three scenarios that seem plausible regarding the ALJ's error. One, the ALJ should have assigned more weight to Dr. Gupta's opinion because it was supported by and consistent with the evidence. In this case, Plaintiff would not be prejudiced because that scenario would support an RFC that looked more like Dr. Gupta's opinion. Two, the ALJ properly assigned little weight because he meant to type that the opinion was "not" supported by and "not" consistent with the evidence.[1] This interpretation

---

[1] The Court believes that this scenario—a typographical error—is the most likely reason for the apparent internal inconsistency, but has considered all three scenarios as equally plausible.

would leave the RFC determination unchanged. Three, the ALJ found Dr. Gupta's opinion supported by and consistent with the evidence but assigned it little weight due to factors he failed to discuss. This would also leave the RFC unchanged. Therefore, none of these scenarios help Plaintiff's claim that the RFC should look less like Dr. Gupta's opinion.

The only way Plaintiff could potentially be prejudiced regarding Dr. Gupta's opinion is if the ALJ should have assigned even less than "little weight" to Dr. Gupta's opinion. This fourth scenario does not seem plausible. If based on a mistake by the ALJ, it would mean that the ALJ both forgot to type the word "not" twice *and* meant to give the opinion less than little weight. This seems highly unlikely. If viewed as a requirement the ALJ failed to perform, such view is not legally sound as discussed in § V.A. above. Further, upon review of the record evidence, Dr. Gupta's opinion *is* supported by and consistent with that evidence. Therefore, assigning even less than "little weight" to his opinion strains credulity, making the error of little to no effect. Standing alone, the ALJ's error regarding Dr. Gupta's opinion does not leave the RFC determination unsupported by substantial evidence.

The ALJ also erred in his negative inference regarding Plaintiff's cessation of work. This was one reason among several cited by the ALJ for why he found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms to be not entirely consistent with the record evidence. The ALJ also cited plaintiff's activities of daily living, especially records regarding her sleep and regular walking. More broadly, in determining the RFC the ALJ extensively noted the objective findings of multiple physicians. He also partially relied on the medical opinions of Drs. Gupta and Blaine. These ample and varied sources provide substantial evidence supporting the ALJ's treatment of Plaintiff's symptom statements, even when taking his negative-inference error into consideration.

Though the ALJ's errors constitute harmless error in isolation, inquiry into their collective effect may nonetheless prove them to be harmful. However, because the RFC determination is based on considering all the relevant evidence, there is voluminous evidence that a reasonable mind could accept as adequate to support the determined RFC. Plaintiff's statements could be viewed as inconsistent with the record evidence based on the objective medical findings, notes and forms from medical appointments, and SSA Function Reports. The mild physical findings of Dr. Marc Valley and the reports of improvement in patient's pain and functionality support the determined RFC. Portions of the findings and opinions of other physicians in the record support the determined RFC. Undeniably, there is also voluminous evidence in the record that would support a more restrictive RFC. But the standard of review focuses on the substantial evidence threshhold, which brings the ALJ's RFC determination here within the "zone of choice." Thus, while the ALJ erred as discussed, such errors were harmless.

## VI. Conclusion

Having reviewed the administrative record and the parties' briefs, Plaintiff's Motion for Summary Judgment [Doc. 15] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 17] will be **GRANTED**, and the decision of the ALJ is **AFFIRMED**. Judgment will be entered in favor of the Commissioner.

**IT IS SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE